# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IMAGE MEDIA ADVERTISING, Inc., <br><br> *Plaintiff,* <br><br> v. <br><br> CLEAR CHANNEL OUTDOOR, Inc., <br><br> *Defendant.* | No. 19 C 2387 <br><br> Judge Virginia M. Kendall |

## **MEMORANDUM OPINION AND ORDER**

Image Media Advertising, Inc. sued Clear Channel Outdoor, Inc. claiming Clear Channel breached a contract between the two parties when it bid on a Chicago Transit Authority (CTA) request for proposal (RFP) to build and manage billboards on one of its train yards, even though the parties' contract allegedly stated Image Media had the right to bid on, construct, and operate billboards on the yard. Clear Channel moved to dismiss (Dkt. 14) the breach-of-contract claim principally arguing that the contract included no right to put up any additional billboards, and even if it did, that right only extended to the property defined in the contract. For the reasons discussed below, the Court grants Clear Channel's motion (Dkt. 14) without prejudice. Image Media may replead, if possible, within 28 days of the publication of this Opinion.

## BACKGROUND

Image Media is a family-owned billboard sign company that advertises primarily along expressways near Chicago. (Dkt. 1-1 ¶ 8.) It earns revenue by selling the rights to advertise on these billboards to various companies. *Id.* Around March 17, 1997, Image Media entered into a contract—the so-called "CTA Billboard Lease"—with the CTA, receiving the right to construct, operate, and maintain billboards on a specific parcel of CTA property. *Id.* ¶ 9.

The agreement specified that "[t]he property shall be used solely to place and handle advertising by means of displays *on three outdoor advertising structures (as hereinafter defined) and for no other purpose whatsoever*, subject, however, to all of the terms and conditions hereinafter set forth." (Dkt. 14-1 at 2–3, § 1.1(a) (emphasis added).) Furthermore, it stated that "[t]his Agreement is *for the Property only*. Nothing in this Agreement shall affect in any way the Authority's right or ability to grant, sell or otherwise convey advertising rights in connection *with locations other than the Property*." *Id.* at 3, § 1.2(a) (emphasis added). The CTA Billboard Lease defines "the Property" as:

> approximately 60 feet by 1,695 feet and which is bounded by the Eisenhower Expressway on the south, the Authority's Des Plaines Avenue Terminal on the east, the Des Plaines River on the west, and Concordia cemetery property on the north, in Forest Park, Illinois as more fully described on the plat of survey attached hereto as Exhibit A-1 (the "Property").

*Id.* at 2.

Image Media constructed and then sold the three billboards, among other assets and permits, to Clear Channel. (Dkt. 1-1 ¶¶ 10–13.) Around February 27, 2003,

Image Media and Clear Channel entered into another agreement, wherein Clear Channel assigned its rights regarding the billboards back to Image Media. *Id.* ¶ 15. This 'sublease' noted, apparently for the first time, that "Image Media shall have the right to construct and operate any such Additional Billboards on the CTA property pursuant to the CTA Billboard Lease; and Image Media . . . [is] hereby released with respect to such Additional Billboards . . ." *Id.* ¶ 18.

Image Media thus pursued local permits and license agreements in order to construct these "additional billboards." *Id.* ¶¶ 20–24. Sometime between July 2006 and February 2007, Image Media "submitted a proposal to the CTA to construct and operate the Additional Billboards and negotiated with the CTA to obtain the right to construct and operate the two of the Additional Billboards." *Id.* ¶ 25. The CTA informed Image Media that it would have to issue an RFP for any additional billboards. *Id.* ¶ 26. The CTA eventually did issue the RFP, but for a large quantity of various properties, not just the site for the potential additional billboards. *Id.* ¶ 27.

The site for the additional billboards is located on a parcel called the Des Plaines Yard, 711 Des Plaines Avenue. (Dkt. 14-2 at 67, 69, 120.) The Des Plaines Yard is in Forest Park, as is 'the Property,' but the locations do not overlap. The Des Plaines Yard is north of the Eisenhower Expressway and not in the narrow strip of property between Concordia Cemetery and the Eisenhower Expressway. *See generally* Dkt 14-3. An overlap is especially implausible because 'the Property' defined in the CTA Billboard Lease fixes the CTA's Des Plaines Avenue Terminal, located at 711 Des Plaines Avenue, as its eastern boundary. *See generally id.*

Ultimately, the CTA selected Clear Channel's bid, and around July 17, 2008, the CTA and Clear Channel entered into an agreement that granted Clear Channel the "'sole and exclusive license to sell, install, display, operate and maintain billboard advertising on the properties.'" (Dkt. 1-1 ¶ 28.) This agreement purportedly included the rights to the additional billboards. *Id.* ¶ 29. As a result, the CTA stopped all negotiations with Image Media from early 2008 through early 2010 while the agreement with Clear Channel was in effect. *Id.* ¶ 32.

Clear Channel and the CTA eventually rescinded their contract, but not before delaying Image Media's procurement of an agreement regarding the additional billboards for more than two years. *Id.* ¶¶ 31, 34–35. Nonetheless, the CTA resumed its negotiations with Image Media in 2010. Those negotiations, however, were bound by the terms of the original CTA Billboard Lease, which runs until 2022. *Id.* ¶ 36. Image Media now believes that the construction of any additional billboards is not economically feasible in this narrow time frame. *Id.* ¶¶ 38–39. Image Media sought to extend its contract with the CTA, but to no avail. *Id.* ¶ 37.

In 2015, Image Media allegedly discovered that Clear Channel was under contract with the CTA to design the additional billboards during the time period that its own negotiations with the CTA stalled. *Id.* ¶¶ 30–31. Image Media thus blames Clear Channel for this delay because it "ultimately destroyed" any possibility that Image Media would reach an economically beneficial agreement with the CTA. *Id.* ¶ 44. Image Media sued Clear Channel in this Court to recover for its loss. (Dkt. 1.)

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a motion to dismiss, the Court accepts as true all well-pleaded allegations and views them in the light most favorable to the plaintiff. *See Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012). But the Court does not accept as true statements of law or unsupported conclusions. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). The Court takes into account the "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," as well as "additional facts set forth in [the plaintiff's] district court brief . . . so long as those facts are consistent with the pleadings." *Matthews v. Hughes*, No. 14 C 7582, 2015 WL 5876567, at *1 (N.D. Ill. Oct. 5, 2015) (citing *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal alterations and quotation marks omitted)).

**ANALYSIS**

To state a breach-of-contract claim in Illinois, a plaintiff must establish: "'(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages.'" *Sevugan v. Direct Energy Servs., LLC*, No. 18-3082, 2019 WL 3367674, at *3 (7th Cir. July 26, 2019) (quoting *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010)); *see*

*Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018); *Cogswell v. CitiFinancial Mortg. Co.*, 624 F.3d 395, 398 (7th Cir. 2010).

Only the third and fourth elements are at issue in this case. Image Media argues Clear Channel breached the parties' contract because Image Media had the sole right to construct additional billboards on the Des Plaines Yard. Clear Channel contends it did not breach the contract, and even assuming it did, it did not cause Image Media's damages. What is more, Clear Channel asserts that the ten- year statute of limitations bars Image Media's claim entirely. *See NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 301 (7th Cir. 2018), *reh'g denied* (Jan. 4, 2019) (citing 735 Ill. Comp. Stat. 5/13-206).

### I. Breach of Contract

Clear Channel insists that it did not breach the sublease agreement for two main reasons: (1) the CTA never assigned any right to Image Media to construct additional billboards in the first place; and (2) even assuming it did, that right only could apply on the parcel defined in the original contract as "the Property."

#### A. Right to Construct Additional Billboards

The first question the Court must answer is whether Image Media has the contractual right to construct any additional billboards. Turning to the language of the CTA Billboard Lease, it is evident that the CTA did not grant Image Media the right to build any additional billboards besides the three specifically mentioned in the agreement.

In Illinois, courts use the four-corners rule to interpret contracts. It follows, then, "if a contract only permits one interpretation, that meaning controls." *Bank of Commerce v. Hoffman,* 829 F.3d 542, 546 (7th Cir. 2016); *see AM Int'l, Inc. v. Graphic Mgmt. Assocs., Inc.,* 44 F.3d 572, 574 (7th Cir. 1995) (citation omitted). The four-corners rule additionally provides that, "if a written agreement is unambiguous, then the scope of the parties' obligations must be determined from the contract language without reference to extrinsic evidence." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 372 (7th Cir. 2009) (citing *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999)).

The first step a court takes to interpret a contract is to "initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007) (citing *Virginia Sur. Co. v. N. Ins. Co. of New York*, 866 N.E.2d 149, 154 (Ill. 2007)); *see Air Safety, Inc.*, 706 N.E.2d at 884. When the contract's language is facially unambiguous, the court will interpret it as a matter of law without resorting to parol (or extrinsic, meaning outside the agreement) evidence. *See PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F. 3d 889, 894 (7th Cir. 2004); *see also Air Safety,* 706 N.E.2d at 884.

In this case, the CTA Billboard Lease is clear in the rights it granted Image Media. Section 1.1(a) states that "[t]he property shall be used solely to place and handle advertising by means of displays on three outdoor advertising structures (as hereinafter defined) and for no other purpose whatsoever, subject, however, to all of

the terms and conditions hereinafter set forth." (Dkt. 14-1 at 2–3, § 1.1(a).) The CTA Billboard Lease does not reference any right to construct additional billboards, just the "three outdoor advertising structures (as hereinafter defined) *and for no other purpose whatsoever*." *Id.* (emphasis added).

This is also true when looking at the sublease agreement. Paragraph 6 provides that "Image Media shall have the right to construct and operate any such Additional Billboards on the CTA property pursuant to the CTA Billboard Lease; and Image Media . . . [is] hereby released with respect to such Additional Billboards . . ." (Dkt. 1-1 ¶ 18.) The sublease, then, serves to transfer the same rights back to Image Media as the CTA Billboard Lease originally granted it. The language of the sublease, particularly the phrase "any such Additional Billboards," does not promise that there was some right to construct additional billboards. Rather, this framing makes it clear that, in the event those rights existed, Clear Channel was transferring them back. The sublease did not create a new right to build additional billboards.

Furthermore, Paragraph 6 points again to the mere possibility, not certainty, of these rights. It states:

> In consideration of Image Media's performance of past and future management services for Clear Channel in connection with the three CTA Billboards, Clear Channel hereby releases and quit claims to Image Media all right, title and interest that it may have acquired under the Asset Purchase Agreement to construct and operate additional billboards on the CTA's property in Forest Park, Illinois under the CTA Billboard Lease (the "Additional Billboards"). Subject to the right of first refusal set forth below, Image Media shall have the right to construct and operate any such Additional Billboards on the CTA property Pursuant to the CTA Billboard Lease . . .

*Id.* This paragraph explains that this was a quitclaim deed for rights that Clear Channel "may have acquired." *Id.* Moreover, the sublease goes on to say that, "in addition to the three CTA Billboards, Clear Channel might be able to pursue the construction and operation of at least one additional billboard." (Dkt. 21 at 7.) The use of words like 'might' and 'may' demonstrate that Clear Channel was being careful with the language it chose in order to convey all the rights it possibly acquired back to Image Media.

Indeed, the very nature of a quitclaim deed is proof that Clear Channel never intended Paragraph 6 to be an assurance regarding the existence of any rights. "Unlike a warranty deed, in which the grantor makes certain guarantees to the grantee, a quitclaim deed conveys only such title as the grantor has and contains no covenants or warranties whatsoever." *Lindy Lu LLC v. Illinois Cent. R. Co.*, 2013 IL App (3d) 120337, ¶ 23 (citing *Mount v. Dusing*, 111 N.E.2d 502 (Ill. 1953)). Hence, the only rights Clear Channel conveyed to Image Media through the sublease, itself a quitclaim deed, were the rights conveyed in the CTA Billboard Lease. Because the CTA Billboard Lease never granted any rights to build additional billboards, the sublease could not have conveyed any construction rights, as they never existed to begin with. Thus, based on the language of the CTA Billboard Lease and the Sublease Agreement, Image Media never had a contractual right to construct additional billboards.

### B. Property Boundaries

Even assuming Image Media has the right to construct additional billboards, this right would only apply on "the Property," as defined in the CTA Billboard Lease.

Image Media concedes that the additional billboards are not located on "the Property" described in its contract with the CTA. It asserts that it nonetheless has the right to construct these additional billboards because a state regulation requires billboards to be 500 feet apart, making it impossible for any more billboards to go on "the Property."

This argument ignores the plain language of the CTA Billboard Lease, which states: "[t]his Agreement is for the Property only. Nothing in this Agreement shall affect in any way the Authority's right or ability to grant, sell or otherwise convey advertising rights in connection with locations other than the Property." (Dkt. 14-1 at 2–3, § 1.2(a).) The location of the disputed billboards, in fact, is not "the Property," but a separate parcel called the Des Plaines Yard, located at 711 Des Plaines Avenue. (Dkt. 14-2 at 67, 69, 120.)

Unsurprisingly, Clear Channel contends that it did not breach its contract with Image Media because these are two separate parcels owned by the CTA. Clear Channel asserts that "the Property" outlined in the CTA Billboard Lease is different from the parcel for which the CTA accepted bids, and upon which Clear Channel did bid. Image Media maintains that it had the right to build beyond the Property's borders.

Here, the contract is clear on its face: Image Media only ever had a right to build upon "the Property" as described by the geographical term in the agreement. Image Media never had a right to build on any other plot of land. The location that is at the center of this dispute is 711 Des Plaines Avenue, which is not a part of "the Property"; in fact, it is a separate parcel of land *next to* "the Property." Therefore,

even if Image Media did have a right to construct additional billboards, that right was only for billboards on "the Property."

Still, Image Media argues that, per the Illinois Department of Transportation's (IDOT) regulations, all billboards constructed along the same side of a highway must be at least 500 feet apart from each other, so its right to construct additional billboards must extend past the boundaries of "the Property," as described in the CTA Billboard Lease. Image Media also relies on the discussions it had with Clear Channel, as well as an oral agreement it alleges it had with Clear Channel.

These arguments, however, all depend upon extrinsic evidence that the Court cannot consider when both the CTA Billboard Lease and the Sublease Agreement are facially unambiguous. Because "[w]hen a contract is unambiguous on its face, the intent of the parties must be construed without consideration of parol evidence." *ADM All. Nutrition, Inc. v. SGA Pharm Lab, Inc.,* 877 F.3d 742, 748–49 (7th Cir. 2017) (citing *Cannon v. Burge,* 752 F.3d 1079, 1091 (7th Cir. 2014)). Instead, the language of a contract, "given its plain and ordinary meaning, is the best indication of the parties' intent." *Gallagher,* 226 Ill. 2d at 233. Where contractual rights are clearly stated within the four corners of the document, as is the case here, the Court need not rely upon extrinsic evidence, such as oral agreements or IDOT regulations. Clear Channel did not breach the contract.

## II. Causation and Statute of Limitations

Two additional and alternative bases for dismissal are causation and the statute of limitations. First, assuming for the sake of argument Clear Channel did in fact

breach the contract, its conduct did not cause the CTA to not offer it the right to construct additional billboards at "the Property." Image Media complains that the CTA did not communicate with Image Media for some time and this resulted in a delay in negotiations that it cannot now come back from. But Image Media did not sue the CTA, even though the CTA's actions seemingly (and not surprisingly) controlled the business negotiations. Image Media's chain-of-causation theory is tenuous, and correspondingly, its damages speculative. *See In re: Emerald Casino, Inc.*, 867 F.3d 743, 757 (7th Cir. 2017) (explaining that unforeseeable damages are those that are the consequence of special or unusual circumstances). Image Media failed to connect the dots between its own decisions (or lack thereof), and any other entity's besides the CTA.

Second, Image Media asserts that, under Illinois's discovery rule, its claim did not accrue until it found out in 2015 that Clear Channel was the reason the CTA did not initially contract with it and why discussions stalled for some time. *See Heiman v. Bimbo Foods Bakeries Distribution Co.*, 902 F.3d 715, 720 (7th Cir. 2018) (describing the discovery rule, which delays the commencement of the statute of limitations until the plaintiff knows or reasonably should know that the defendant wrongfully injured it). Taking Image Media, a sophisticated economic actor, at its word that it did not find out it was Clear Channel who stole the bid from it until 2015 (a dubious claim requiring a stretch of the imagination), it still knew that somebody won the RFP and it was not the one.

Image Media, then, "is not really disputing that it was aware of the possibility that it had been wrongfully injured as of the injury date, but is arguing only that it could not be sure." *Id.* (internal citations and quotation marks omitted). True, Image Media might not have known exactly how Clear Channel pulled it off, but the rule is not that specific; "some indication of wrongdoing" is enough to prevent its application. *Id.* (internal citation and alterations omitted). The relationship between the injury and wrongful conduct here is hardly obscure. Clear Channel, Image Media's competitor, just beat it to the punch for the right to construct additional billboards, a right that Image Media says it has had for nearly 20 years. Whether it obtained notice from the internet or the horse's mouth, Image Media should have known that somebody not just interfered with its development rights but *took them*. Its claim is therefore untimely.

## CONCLUSION

Image Media failed to allege facts that raise its right to relief beyond a speculative level. Accordingly, the Court grants Clear Channel's motion to dismiss (Dkt. 13) without prejudice. Image Media may amend its complaint, consistent with this Opinion and Rule 11, within 28 days of the publication of this Opinion.

_____
Virginia M. Kendall
United States District Judge

Date: August 13, 2019